UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE:                                              :          MEMORANDUM DECISION
                                                    :              AND ORDER
TERRORIST ATTACKS ON                                :
SEPTEMBER 11, 2001                                  :          03 MDL 1570 (GBD) (SN)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

This document relates to:

>        *Ashton, et al. v. Al Qaeda Islamic, et al.*, No. 02-cv-06977
>        *Burlingame, et al. v. Bin Laden, et al.*, No. 02-cv-07230
>        *Bauer, et al. v. Al Qaeda Islamic Army, et al.*, No. 02-cv-07236
>        *Leftt, et al. v. Kingdom of Saudi Arabia, et al.*, No. 18-cv-03353

GEORGE B. DANIELS, United States District Judge:

In July and August 2022, six groups of Plaintiffs moved this Court to issue partial final default judgments against the Taliban and its former leader Mullah Muhammad Omar based on injuries sustained in the September 11, 2001 terrorist attacks ("9/11 Attacks"). (*See* ECF Nos. 8274, 8298, 8335, 8363, and 8386;[1] ECF No. 75 in No. 18-cv-03353.) On March 15, 2023, Magistrate Judge Sarah Netburn issued her Report and Recommendation (the "Report"),[2] recommending that this Court grant the motions for default judgment and award damages for certain claims against the Taliban, and deny all other motions with leave to refile. (Report, ECF No. 8929, at 1.) A subset of Plaintiffs ("*Dickey* Plaintiffs") in *Ashton, et al. v. Al Qaeda Islamic, et al.*, No. 02-cv-06977, to whom default judgments were granted, filed objections to the Report's recommendation to grant default judgments to other Plaintiffs. (*See* Objections, ECF No. 8959.) On March 30, 2023, this Court adopted the Report in full (the "Decision"), rejecting *Dickey*

---

[1] Unless otherwise indicated, all docket numbers refer to the main docket sheet for this multidistrict litigation. *See In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570.

[2] Magistrate Judge Netburn amended her original March 14, 2023 Report and Recommendation on the motions (ECF No. 8925) with updated exhibit numbers and a revised appendix. (Report at 1 n.2.)

Plaintiffs' Objections to the granting of default judgments to other Plaintiffs. This Court granted default judgment awards to nearly all U.S. citizen Plaintiffs, including the *Dickey* Plaintiffs. (Decision, ECF No. 8973.)

Although the Decision granted *Dickey* Plaintiffs the relief they requested in their default judgment motion, (*see Dickey* Am. Mot. for Default J., ECF No. 8386), before this Court is *Dickey* Plaintiffs' motion to certify the Decision to grant defaults to other Plaintiffs for interlocutory appeal, as well as to stay all other proceedings against the Taliban, (Mot. to Certify, ECF No. 8992; ECF No. 1945 in No. 02-cv-06977). For the reasons stated herein, *Dickey* Plaintiffs' motion to certify an interlocutory appeal of the granting of default judgments to other Plaintiffs, and to stay further proceedings, is DENIED.

## I.   BACKGROUND[3]

Plaintiffs filed a complaint seeking to hold the Taliban and Mullah Muhammad Omar liable for injuries caused by the 9/11 Attacks. Pursuant to Court Order (ECF No. 445), Plaintiffs served the Taliban and Omar by publication. (*See* 2005 Service Verifications, ECF Nos. 709 and 735.) On September 30, 2005, Plaintiffs filed their Sixth Amended Consolidated Master Complaint (ECF No. 1463), the operative complaint for the default judgment motions. (*See* Report at 2.) After Defendants neither responded nor appeared, Plaintiffs moved for entry of default, which this Court granted on May 12, 2006. (*See* Order, ECF No. 1797.)

The instant default judgment motions sought partial final default judgment against the Taliban and Omar on behalf of different groups of Plaintiffs: U.S. citizens and noncitizens, estate and personal injury Plaintiffs, and immediate family members and their functional equivalents.

---

[3] This Court assumes familiarity with the general background of this case and will only restate relevant background as necessary to address the pending motion. This Court refers to facts detailed in the Decision and the Report throughout this decision.

(*See* Report at 2 (listing motions).)  These Plaintiffs had all been awarded relief against Iran and then sought similar damages against the Taliban and Omar.  (*Id.*)  While the default judgment motions were pending, Magistrate Judge Netburn issued an Order requesting further briefing on two questions: (1) who qualifies as a proper plaintiff in a federal claim against the Taliban, and (2) whether the Court should *sua sponte* invoke the statute of limitations for claims against the Taliban.  (Order, ECF No. 8778; *see also* Report at 6.)

This Court held that Magistrate Judge Netburn's Report properly assessed these questions in the context of three groups of claims: (1) against Muhammad Omar; (2) by noncitizens against the Taliban; and (3) by U.S. citizens against the Taliban.  (Decision at 4.)  This Court adopted the Report in denying all claims against Omar because he is dead and dismissed him from all actions in this multidistrict litigation pursuant to Federal Rule of Civil Procedure 25(a)(1).  (*Id.* at 4–5.)  The Decision also denied without prejudice to refile all claims against the Taliban brought by noncitizens due to insufficient pleadings.  (*See id.* at 5–6.)  Finally, over *Dickey* Plaintiffs' Objections, this Court adopted the recommendation to grant most of the U.S. citizens' motions for partial final default judgment under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, against the Taliban.  (*See* Decision at 6–10.)

*Dickey* Plaintiffs objected to granting default judgments for other Plaintiffs who are parents and siblings of 9/11 victims, as well as for claims filed after the ATA's statute of limitations had run.  (*See* Objections.)  The Decision granted *Dickey* Plaintiffs the relief they sought in their own default judgment motion, (*see Dickey* Am. Mot. for Default J.), but this Court rejected their state estate-law and statute-of-limitations arguments that sought to prevent other Plaintiffs from receiving similar relief, (Decision at 6–9).  *Dickey* Plaintiffs raise these same arguments here in their instant motion to certify and stay.  (*Compare* Objections, *with* Mem. of Law on Mot. to

Certify, ECF No. 8993.)   *Dickey* Plaintiffs therefore are not attempting to appeal any adverse decision on their own motion for default, which was fully granted.[4]

## II.   LEGAL STANDARDS

### A.  Certification for Immediate Appeal

District courts may certify an issue for immediate appeal:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).  This provision is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals."  *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). "It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Id.*  Use of "this certification procedure should be strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."  *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (cleaned up).

"The party seeking an interlocutory appeal has the burden of showing [these] 'exceptional circumstances' to 'overcome the general aversion to piecemeal litigation.'"  *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 73 (S.D.N.Y. 2007) (quoting *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006)).   The determination of whether a party has carried this burden is "committed to the discretion of the district court."  *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991).

---

[4] This Court notes that there is an issue as to whether *Dickey* Plaintiffs even have standing to oppose or offensively attack the claims of other Plaintiffs within this multidistrict litigation.  (*See* Pls.' Executive Committee Mem. of Law, ECF No. 8813, at 2–4.)  In conjunction with the requirements for Article III standing, "[p]rudential standing encompasses the rule against the adjudication of generalized grievances." *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016).  This Court declines to resolve this standing issue on *Dickey* Plaintiffs' present motion to certify for interlocutory appeal and to stay.

## B. Stay

Courts consider four factors when determining whether to grant a stay: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether [it] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties . . . ; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *accord SEC v. Daspin*, 557 F. App'x 46, 47–48 (2d Cir. 2014).

The first two factors are "the most critical." *Nken*, 556 U.S. at 434. The first factor—likelihood of success on the merits—can be satisfied when "there are 'serious questions' going to the merits of the dispute and the applicant is able to establish that the balance of hardships tips *decidedly* in its favor." *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656, 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014) (quoting *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)). "The degree to which a factor must be present varies with the strength of the others." *Daspin*, 557 F. App'x at 48. Specifically, the "'probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay.'" *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)).

## III.   *DICKEY* PLAINTIFFS' MOTION TO CERTIFY AN INTERLOCUTORY APPEAL IS DENIED

*Dickey* Plaintiffs fail to establish the exceptional circumstances necessary to certify an interlocutory appeal. Based on the standard for certification, *Dickey* Plaintiffs do not establish that (1) the Decision involves a "controlling question of law," (2) a "substantial ground for difference of opinion" exists, or (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## A.  The Decision Does Not Rest on a "Controlling" Question of Law

This Court's ruling on whether the ATA authorizes claims by immediate family members who are not "heirs" under the relevant state law does not constitute a "controlling question of law" under § 1292(b).  (*Contra* Mem. of Law on Mot. to Certify at 7.)  A "'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017) (citation omitted).  Here, *Dickey* Plaintiffs assert that the Decision turns on merely "a question of statutory interpretation" regarding the ATA.  (Mem. of Law on Mot. to Certify at 7.)  But this Court's holding as to which family members of 9/11 victims can recover solatium damages relied on the longstanding record of relief in this 9/11 multidistrict litigation and related terrorism cases, in addition to the statutory language. (*See* Decision at 6–8.)  Such a determination, bound up in the relevant facts and significant procedural history of this litigation, is not a "'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Youngers*, 228 F. Supp. 3d at 298 (citation omitted).

## B.  *Dickey* Plaintiffs Fail to Show Substantial Ground for Difference of Opinion

The second factor for certification is "substantial ground for difference of opinion" on the question of law.  28 U.S.C. § 1292(b).  Substantial ground for differences of opinion may exist where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (citation omitted).  A district judge, when faced with a motion to certify, must also "analyze the strength of the arguments in opposition to the challenged ruling" and decide whether there is "a *substantial* ground for dispute." *In re Facebook, Inc.*, 986 F. Supp. 2d 524, 541 (S.D.N.Y. 2014) (citation omitted).

In their arguments that certain family members are ineligible for relief under the ATA, *Dickey* Plaintiffs fail to demonstrate that there is conflicting authority on the issue or that the issue is "particularly difficult and of first impression." (*See* Mem. of Law on Mot. to Certify at 9 (citing *Capitol Recs.*, 972 F. Supp. 2d at 551).) Courts have resolved who may bring claims under 18 U.S.C. § 2333 in line with this Court's Decision. *See, e.g., Knox v. Palestine Liberation Organization*, 442 F. Supp. 2d 62, 75 (S.D.N.Y. 2006) (both parents and siblings may qualify as "survivors" under the ATA); *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006) (parents and siblings of victims have sufficient familial relationships to bring claims under § 2333(a)); *Ungar ex rel. Strachman v. Palestinian Authority*, 304 F. Supp. 2d 232, 263–64 (D.R.I. 2004) (use of the term "survivors" in § 2333(a) provides a cause of action for "family members who are not legal heirs (such as the parents and siblings of a decedent who leaves children)"). Thus, *Dickey* Plaintiffs have not shown substantial ground for difference of opinion exists so as to justify immediate interlocutory appeal.

*Dickey* Plaintiffs similarly fail to provide conflicting authority on the statute-of-limitations issue or demonstrate that the issue is "particularly difficult and of first impression." *Dickey* Plaintiffs argue that it is appropriate for a court to dismiss a claim if it is apparent on the face of a complaint that the action is time-barred. (*See* Mot. to Certify at 8 n.6.) But the statute of limitations is "an affirmative defense that is waived [or forfeited] if not raised." *Kropelnicki v. Siegel*, 290 F.3d 118, 130 n.7 (2d Cir. 2002). *Dickey* Plaintiffs attempt to assert the Taliban's statute-of-limitations defense against other Plaintiffs. (*See* Report at 9 n.5); *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (The "prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975))). "District court[s] ordinarily

should not raise [the statute of limitations] *sua sponte*," *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987), even in favor of a defendant who has never appeared in the case, *Sec. & Exch. Comm'n v. Amerindo Inv. Advisors*, 639 F. App'x 752, 754 (2d Cir. 2016); *see also Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1114–15 (D.C. Cir. 2019) (holding that district court "lacked authority or discretion to *sua sponte* raise the terrorism exception's statute of limitations"). Due to a lack of conflicting authority and the significant case law on the statute-of-limitations issue, *Dickey* Plaintiffs fail to demonstrate a substantial ground for difference of opinion.

### C. *Dickey* Plaintiffs Do Not Demonstrate That Interlocutory Appeal Would Materially Advance the Ultimate Termination of the Litigation

Finally, certification would stymie rather than "materially advance the ultimate termination of th[is] litigation." *See* 28 U.S.C. § 1292(b). Material advancement occurs when an appeal "promises to advance the time for trial or shorten the time required therefor." *Youngers*, 228 F. Supp. 3d at 302 (citation omitted). This factor focuses on the "institutional efficiency of both the district court and the appellate court," *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 392 (S.D.N.Y. 2020) (citation omitted), because "efficiency of the federal court system is among the chief concerns underlying Section 1292(b)," *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000). As noted above, a ruling from the Second Circuit would not rest on a pure question of law that the court could resolve quickly, but rather a review of the extensive record and procedural history in this litigation. *See* discussion *supra* Section III.A. Certification would also not bring this multidistrict litigation closer to its "ultimate termination." 28 U.S.C. § 1292(b). Certification would instead result in further delay to await "piecemeal" appellate review that is unlikely to change who will recover under the ATA. *See* discussion *supra* Section III.B, *infra* Part IV. Accordingly, *Dickey* Plaintiffs have not established the exceptional circumstances necessary to certify an interlocutory appeal.

## IV. *DICKEY* PLAINTIFFS' MOTION FOR A STAY IS DENIED

In addition to not meeting the requirements for interlocutory appeal, *Dickey* Plaintiffs also do not qualify for a stay of proceedings against the Taliban. First, *Dickey* Plaintiffs have failed to show that they are likely to succeed on the merits. The ATA's plain text, legislative history, and relevant case law allow immediate family members of those killed in the 9/11 Attacks to bring claims under 18 U.S.C. § 2333(a). *See* discussion *supra* Section III.B. Moreover, this Court previously exercised its discretion and declined to invoke the ATA's statute of limitations *sua sponte* in accordance with analogous default and terrorism-related cases. *See* discussion *supra* Section III.B. *Dickey* Plaintiffs have not shown that they are likely to prevail in their appeal.

Second, *Dickey* Plaintiffs have failed to articulate the irreparable injury they will suffer from the denial of their request for a stay. They argue that a stay is appropriate due to the thousands of claims that would be dismissed if they are successful upon their appeal. (*See* Mem. of Law on Mot. to Certify at 15–16.) *Dickey* Plaintiffs, however, cannot impede the meritorious claims of other Plaintiffs in order to seek their own judgments against the Taliban or attempt to execute on those judgments. *See Smith ex rel. Estate of Smith v. Fed. Reserve Bank of New York*, 346 F.3d 264, 270–71 (2d Cir. 2003) (noting that judgment for a plaintiff does not guarantee any assets will be available when that plaintiff seeks to satisfy his judgment against a terrorist party, nor does it prevent other plaintiffs from depleting assets once those assets are unblocked or confiscated). Additionally, *Dickey* Plaintiffs do not articulate that Taliban funds currently exist that might satisfy any of the Plaintiffs' default judgments in support of a cognizable argument of irreparable harm of asset depletion. (*Contra* Mem. of Law on Mot. to Certify at 4 n.3.) The Afghanistan funds held at the Federal Reserve Bank of New York (the "FRBNY") are not subject to any imminent threat of dissipation: No Plaintiff has a right to the turnover of funds at the FRBNY due to this Court's previous ruling on the turnover motions. (*See* Feb. 21, 2023 Mem. Decision and Order, ECF No.

8866.) Thus, the Decision does not prejudice *Dickey* Plaintiffs, and they have failed to demonstrate that they will suffer irreparable harm absent a stay. There is no current dispute over any available funds.

Third, issuance of the stay would substantially injure the thousands of Plaintiffs in this multidistrict litigation who either received relief or did not object to the default judgment Decision. This Court granted entries of default against the Taliban as early as 2006 for Plaintiffs, who then moved for partial final default judgment awards in 2022. The efficient resolution of this litigation serves to benefit all parties and allow this Court to permit eligible Plaintiffs an equal opportunity to seek a judgment for damages as appropriate under § 2333. Further delays due to a stay would prejudice the rights of the vast majority of Plaintiffs.

Finally, staying proceedings against the Taliban is not within the public interest. This Court has recently emphasized that the public interest in this longstanding multidistrict litigation lies in bringing to justice those responsible for the 9/11 Attacks and providing relief to the family members who lost loved ones on September 11, 2001. (*See* Jan. 12, 2023 Mem. Decision and Order, ECF No. 8828, at 6; Feb. 24, 2023 Mem. Decision and Order, ECF No. 8876, at 5.) While *Dickey* Plaintiffs rightly assert the importance of resolving the "wrongful death claims asserted against the Taliban," (Mem. of Law on Mot. to Certify at 14), such resolution includes adjudicating solatium damages for family members of those killed in the 9/11 Attacks. Moreover, default judgments against terrorist groups such as the Taliban penalize international terrorism. The public interest compels this Court's adjudication of the broadest possible pool of claims against the Taliban so as to hold terrorists civilly accountable and deter future acts of terrorism. *See, e.g., Linde v. Arab Bank, PLC*, 706 F.3d 92, 112 (2d Cir. 2013) ("[I]mportant U.S. interests [are] at stake in arming private litigants with the 'weapons available in civil litigation' to deter and punish

the support of terrorism." (citation omitted)).   The *Dickey* Plaintiffs' arguments that they are exclusively entitled to default judgments do not outweigh these countervailing public interests in national security, public safety, and apportioned justice.

## V.   CONCLUSION

Because *Dickey* Plaintiffs fail to establish the exceptional circumstances necessary to certify an interlocutory appeal or to grant a stay, *Dickey* Plaintiffs' motion to certify an interlocutory appeal and stay all proceedings against the Taliban (ECF No. 8992; ECF No. 1945 in No. 02-cv-06977) is DENIED.

The Clerk of Court is directed to close the open motions at ECF No. 8992 in Case No. 03-md-1570 and ECF No. 1945 in Case No. 02-cv-6977.


Dated: June 29, 2023
       New York, New York

                                        SO ORDERED.

                                        *George B. Daniels*
                                        _____
                                        GEORGE B. DANIELS
                                        United States District Judge